UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JONATHAN RODEN,

     *Plaintiff,*             CASE NO. 2:21-cv-12183

*v.*                               HON. MARK A. GOLDSMITH
                                    DISTRICT JUDGE

JASON LAPHAM,               HON. PATRICIA T. MORRIS
MICHAEL HESKETTE,        MAGISTRATE JUDGE
DEREK GOWDY,
and DEMPS,

     *Defendants.*

_____/

**REPORT AND RECOMMENDATION ON DEFENDANTS'MOTION FOR
SUMMARY JUDGMENT ON THE BASIS OF EXHAUSTION (ECF No. 22)**

## I.   RECOMMENDATION

For the following reasons, **I RECOMMEND** that this Court **GRANT** Defendants Jason LaPham, Derek Gowdy, Michael Heskett, and Michael Demps' motion for summary judgment on the basis of exhaustion, dismissing all claims against them **WITHOUT PREJUDICE**.  (ECF No. 22).

## II.   REPORT

### A.   Procedural and Factual Background

On September 8, 2021, Plaintiff Jonathan Roden, a Michigan Department of Corrections ("MDOC") inmate housed at the G. Robert Cotton Correctional Facility

("JCF") in Jackson, Michigan, filed suit in this Court under 42 U.S.C. § 1983, alleging June 7, 2021 violations of the Eighth Amendment. The Eighth Amendment violations arise from Defendants "knowingly, intentionally, and maliciously" exposing him to the COVID-19 virus by placing him in a shower that had been recently used by a COVID-19-positive inmate, "stripping his clothing," and leaving him overnight in the shower. (ECF No. 1, PageID.1).

The Complaint contains the following factual allegations. At 6:00 p.m. on June 7, 2021, Plaintiff was removed from his housing unit for failing to be "on his bunk" during a "short count," a Class II misconduct. (*Id*. at PageID.2, ¶ 12). Defendants Heskette and Lapham then walked Plaintiff to the "COVID-19 [quarantine] floor" and placed him in the "COVID quarantine shower." (*Id*., ¶ 13). Plaintiff "immediately" told the officers "[t]his shower is dirty and the floor is wet" to which Lapham replied "[y]eah I know. Strip give me all of your clothes." (*Id*., ¶ 14). "Several prisoners" then yelled that the shower in which Plaintiff was held was the "COVID shower." (*Id*.). In reaction to the prisoners' warning, Plaintiff pleaded to be removed from the shower. (*Id*.). Despite the warnings and Plaintiff's pleading, Lapham repeated his command to disrobe and proceeded to conduct a strip search. (*Id*. at PageID.3-4, ¶¶ 16-17). Following the strip search, Lapham provided Plaintiff with a pair of boxer shorts and t-shirt, then slammed "the slot" and left. (*Id*. at PageID.4, ¶ 17). Sometime later while Defendant Demps was making his rounds,

Plaintiff asked him to open "the door slot" to improve circulation and also asked him to inform others that Plaintiff was being improperly held in a contaminated area. (*Id.*, ¶ 18).  Defendant Demps opened the door slot and told Plaintiff that he would "let them know" of the improper placement before resuming his rounds.  (*Id.*).

On Defendant Demps next round, he was accompanied by Defendant Gowdy, an MDOC sergeant.  (*Id.*, ¶ 19).  Defendant Demps told Defendant Gowdy that Plaintiff needed to speak with him and that Plaintiff was "saying he does not have COVID." (*Id.*).  Plaintiff then told Defendant Gowdy that he did not have COVID-19 and that the shower was "filthy," noting that his feet were bare. (*Id.*, ¶ 20). Plaintiff also informed Defendant Gowdy that "[t]hey just took a covid guy out of here." (*Id.*).  Defendant Gowdy then stated that Plaintiff "should not have come to [segregation]" on [Gowdy's] shift then "walked off." (*Id.*).  Following Defendant Gowdy's departure, Plaintiff remained in the shower until he was released at 1:35 a.m. the next morning to the prison's "general population." (*Id.*, ¶ 21).  He was not tested for COVID-19 before being released into the general population.  (*Id.*).

Plaintiff alleges that as a result of being placed in the contaminated shower, he experienced "anxiety, humiliation, mental anguish, fear of infection, terror, severe headache and back pain with swelling." (*Id.* at PageID.5-6, ¶ 28).  He asks for $50,000 in damages.

## B.    Summary Judgment Standard

A court will grant a party's motion for summary judgment when the movant shows that "no genuine dispute as to any material fact" exists. Fed. R. Civ. P. 56(a). In reviewing the motion, the court must view all facts and inferences in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The moving party bears "the initial burden of showing the absence of a genuine issue of material fact as to an essential element of the non-movant's case." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989) (quoting *Celotex Corp. v. Cartrett*, 477 U.S. 317, 323 (1986)) (internal quotation marks omitted). In making its determination, a court may consider the plausibility of the movant's evidence. *Matsushita*, 475 U.S. at 587-88. Summary judgment is also proper when the moving party shows that the non-moving party cannot meet its burden of proof. *Celotex*, 477 U.S. at 325.

The non-moving party cannot merely rest on the pleadings in response to a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Instead, the non-moving party has an obligation to present "significant probative evidence" to show that "there is [more than] some metaphysical doubt as to the material facts." *Moore v. Philip Morris Cos.*, 8 F.3d 335, 339-40 (6th Cir. 1993). The non-movant cannot withhold evidence until trial or rely on speculative possibilities that material issues of fact will appear later. 10B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2739 (3d ed. 1998). "[T]o

withstand a properly supported motion for summary judgment, the non-moving party must identify specific facts and affirmative evidence that contradict those offered by the moving party." *Cosmas v. Am. Express Centurion Bank*, 757 F. Supp. 2d 489, 492 (D. N.J. 2010). In doing so, the non-moving party cannot simply assert that the other side's evidence lacks credibility.  *Id.* at 493. And while a pro se party's arguments are entitled to liberal construction, "this liberal standard does not ... 'relieve [the party] of his duty to meet the requirements necessary to defeat a motion for summary judgment.'" *Veloz v. New York*, 339 F. Supp. 2d 505, 513 (S.D.N.Y. 2004) (quoting *Jorgensen v. Epic/Sony Records*, 351 F.3d 46, 50 (2d Cir. 2003)). "[A] pro se party's 'bald assertion,' completely unsupported by evidence, is not sufficient to overcome a motion for summary judgment." *Lee v. Coughlin*, 902 F. Supp. 424, 429 (S.D.N.Y. 1995) (quoting *Carey v. Crescenzi*, 923 F.2d 18, 21 (2d Cir. 1991)).

When the non-moving party fails to adequately respond to a summary judgment motion, a district court is not required to search the record to determine whether genuine issues of material fact exist. *Street*, 886 F.2d at 1479-80. The court will rely on the "facts presented and designated by the moving party." *Guarino v. Brookfield Twp. Trs.*, 980 F.2d 399, 404 (6th Cir. 1992). After examining the evidence designated by the parties, the court then determines "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so

onesided that one party must prevail as a matter of law." *Booker v. Brown &
Williamson Tobacco Co.*, 879 F.2d 1304, 1310 (6th Cir. 1989) (quoting *Anderson*,
477 U.S. at 251-52). Summary judgment will not be granted "if the evidence is such
that a reasonable jury could return a verdict for the non-moving party." *Anderson*,
477 U.S. at 248.

### C. Exhaustion Under the PLRA

Under the Prison Litigation Reform Act ("PLRA") of 1996, specifically 42
U.S.C. § 1997e(a), "[n]o action shall be brought with respect to prison conditions
under § 1983 ... by a prisoner confined in any jail, prison, or other correctional
facility until such administrative remedies as are available are exhausted."
The exhaustion requirement is mandatory and applies to all suits regarding prison
conditions, regardless of the nature of the wrong or the type of relief sought. *Porter
v. Nussle*, 534 U.S. 516 (2002); *Booth v. Churner*, 532 U.S. 731, 741 (2001).
Furthermore, "exhaustion" under the PLRA means "proper exhaustion." *Woodford
v. Ngo*, 548 U.S. 81, 92 (2006). In *Woodford*, the Supreme Court defined
"proper exhaustion" as requiring "compliance with an agency's deadlines and other
critical procedural rules...." *Woodford*, 548 U.S. at 90.

MDOC Policy Directive ("P.D.") 03.02.130, effective March 18, 2019,
prescribes the three-step administrative exhaustion process for grievable matters. At
Step I, a prisoner must "attempt to resolve the issue with the staff member involved

within two business days" and, if unsuccessful, must file a grievance within five business days. *Id.* at ¶ Q. If the inmate is dissatisfied with the disposition of the grievance, or does not receive a response ten days after the due date, he or she may file a Step II grievance using the appropriate form. *Id.* at ¶ DD. Similarly, if the inmate is dissatisfied with the Step II response or does not receive a response for ten days after the response was due, he or she may file a Step III grievance. *Id.* at ¶ HH.

To be properly exhausted, a defendant must be named at Step I. P.D. 03.02.130, ¶ S provides:

> The issues should be stated briefly but concisely. Information provided is to be limited to the facts involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places, and names of all those involved in the issue being grieved are to be included.

(underscore in original).

### D. Analysis

The following chronology is pertinent to the exhaustion question:

June 7, 2021- cause of action accrues

June 9, 2021 - Plaintiff files Step I grievance JCF 20-21-0609-790-3D ("JCF- 979"). (ECF No. 24, PageID.131).

June 24, 2021 – Plaintiff files Step II grievance in JCF-979. (*Id.* at PageID.133).

July 12, 2021 – MDOC receives an extension to July 28, 2021 to file Step II response.  (*Id.* at PageID.130).

August 4, 2021 – Not having received Step II response, Plaintiff sends Step III appeal. (*Id*. at PageID.135).[1]

September 8, 2021 – Plaintiff files his complaint in this Court. (ECF No. 1).

September 24, 2021 – Step II response filed. (*Id*. at PageID.134).

Defendants argue that JCF-979 was not exhausted at Step III for three alternative reasons: (1) Plaintiff did not submit a Step III appeal; (2) even if he had submitted a Step III appeal, it would have been rejected for failing to include the Step II response; and (3) even if the Step III appeal had been processed on the merits, Plaintiff did not wait for the grievance process to be completed before he filed his lawsuit. (ECF No. 25, PageID.138).

As to whether Plaintiff in fact submitted a Step III appeal, Defendants have submitted an MDOC Prisoner Step III Grievance Report for Plaintiff that does not show a Step III grievance having been filed for JCF-979. (ECF No. 22-3, PageID.102-109). They have also submitted, with their reply brief, the affidavit of Richard Russell, Manager of the Grievance Section in the Office of Legal affairs ("OLA") of the MDOC.  Mr. Russell states that when a Step III grievance is received, "it is logged into the Step III database (under its grievance identifier when provided) and assigned to a Grievance Specialist for processing." (ECF No. 25-3, PageID.153).

---

[1] While the MDOC has no record of having received or logged in Plaintiff's Step III appeal, Plaintiff has submitted what purports to be a Step III appeal form dated August 4, 2021. (*Id*.).

He states that "JCF-979 was not received and filed at Step III because it does not appear in Roden's Step III Grievance Report and does not bear a date-stamp indicating the date of receipt at Step III." (*Id.* at PageID.155).

Plaintiff has submitted his own affidavit, stating at ¶ 8, "No response [to the Step II appeal] was timely provided. On August 4, 2021, I mailed my goldenrod copy of my Step III appeal to Director's Office, P.O. Box 30003, Lansing, Michigan 48909, without the step II response because it had not been provided." (ECF No. 24, PageID.129).   Defendant argues that this affidavit is of no effect because "[c]onclusory allegations and self-serving affidavits, without support in the record, do not create a triable issue of fact and are insufficient to withstand a motion for summary judgment." (ECF No. 25, PageID.139) (quoting *Gill v. Suburban Cadillac of Lansing, LLC*, No. 1:18-cv-676, 2020 WL 207199, at 4 (W.D. Mich. Jan. 14, 2020)).

It is true that unsupported or conclusory statements will not suffice to defeat a motion for summary judgment. "Rather, the non-moving party must be able to point to some facts which may or will entitle him to judgment, or refute the proof of the moving party in some material portion, and . . . may not merely recite the incantation, Credibility, and have a trial on the hope that a jury may disbelieve factually uncontested proof." *Fogerty v. MGM Group Holdings Corp., Inc.*, 379 F.3d 348, 353-54 (6th Cir. 2004).  In this case, however, Plaintiff has submitted a

Step III grievance appeal form, signed and dated August 4, 2021, that tends to corroborate his affidavit. (ECF No. 24, PageID.135). The Step III document is dated within 10 days of when the Step II response was due, and would have been timely under MDOC policy. He has also submitted his Step II grievance appeal, showing an intent to appeal and not let the matter rest after the Step I denial. Whether or not his affidavit and documentary submissions are ultimately found to be credible, Plaintiff has proffered more than a "conclusory and self-serving affidavit," and his and Defendants' submissions create an issue of fact as to whether he filed a Step III grievance. Therefore, summary judgment may not be granted on this basis.

As to the argument that Plaintiff failed to include the Step II response with his Step III appeal, Defendants would have him do the impossible, since the Step II response was not issued until September 24, 2021, even though an extension to July 28, 2021, had been granted. And if Plaintiff had waited until September 24 to file his Step III appeal, it would have been rejected as untimely under MDOC Policy Directive ("PD") 03.02.130 HH, which provides that a Step III grievance must be filed "within ten business days after receiving the Step II response or, *if no response was received, within ten business days after the date the response was due, including any extensions.*" (ECF No. 22-2, PageID.97) (emphasis added). This Policy logically presupposes that a timely Step III grievance submitted where no Step II response was received will not contain a Step II response. The absence of a Step II response

to Plaintiff's August 4, 2021, Step III appeal is therefore not a basis to find non-exhaustion.

This leaves the question of whether Plaintiff prematurely and improperly filed his complaint before the grievance process was completed. On this issue, Defendants have the better argument.

Plaintiff filed his complaint on September 8, 2021, 35 days after he purportedly filed his Step III appeal. PD 03.02.130 II states, "Generally, Step III responses will be responded to within 60 business days. The Step III response is final." (ECF No. 22-2, PageID.97). In his affidavit, Richard Russell states, "If JCF-979 had been received at Step III on or around August 4, 2021, it would not have been completed at Step III by September 8, 2021, as the Step III review process took more than 40 days during that timeframe." (ECF No. 25-3, PageID.155).

Although the "general" 60-day period for a response referred to in PD 03.02.130 II is not written in mandatory terms, Courts have held that it is a presumptively "reasonable" time, beyond which a grievance can be considered exhausted at Step III if no response is received. In *Hardrick v. Jenkins-Grant*, No. CV 20-12258, 2022 WL 667790 (E.D. Mich. Jan. 31, 2022) (Grand, M.J.), *report and recommendation adopted,* No. 20-CV-12258, 2022 WL 662282 (E.D. Mich. Mar. 4, 2022), the plaintiff filed his complaint more than 60 days after he had filed his Step III appeal, yet had not received his response. The Court found as follows:

The MDOC's Policy Directive on this issue merely states, "Generally, Step III responses will be responded to within 60 business days." Even assuming this provision requires an inmate to wait 60 business days after submitting his Step III appeal before filing suit, Hardrick did so here. *While the MDOC may have had very legitimate reasons for taking longer than 60 business days to respond to Hardrick's Step III appeal, Hardrick's filing of his civil complaint after 60 business days passed cannot be said to have violated the MDOC's grievance procedures.*

*Id.*, at *1. (Emphasis added).

Likewise in *Berryman v. Haas*, 2017 WL 3263980 (E.D. Mich. July 31, 2017), *aff'd,* No. 2018 WL 4042903 (6th Cir. Apr. 18, 2018) (Michelson, J.), the plaintiff filed his complaint 60 days after having filed a Step III appeal and not receiving a response. Finding that he had properly exhausted his administrative remedies, the Court stated:

A prisoner need not wait around forever for a grievance response - otherwise a prison could forestall suit indefinitely. *See Lewis v. Washington*, 300 F.3d 829, 833 (7th Cir. 2002) ("We join the Eighth and Fifth circuits on this issue because we refuse to interpret the PLRA so narrowly as to permit prison officials to exploit the exhaustion requirement through indefinite delay in responding to grievances." (internal quotation marks and alterations omitted)); *Jarrett v. Snyder*, No. 1:13-CV-139, 2014 WL 4472732, at *2 (W.D. Mich. Sept. 10, 2014) ("Defendants' argument that Plaintiff should have simply waited for a response before filing his complaint—no matter how long that response took—is unavailing."); *cf Boyd v. Corr. Corp. of Am.*, 380 F.3d 989, 996 (6th Cir. 2004) ("[W]e conclude that administrative remedies are exhausted when prison officials fail to timely respond to a properly filed grievance.").

*Id.*, at *5.

Conversely in *Johnson v. Burt*, No. 1:20-cv-802, 2021 WL 3473483 (W.D. Mich. Aug. 6, 2021), the plaintiff filed his complaint only 10 days after filing his Step III appeal. Finding that the plaintiff had not exhausted his administrative remedies before filing suit, the Court referred to the 60-day language of the Policy Directive, implying that as the point at which a grievance appeal can be deemed exhausted:

> In this case, Johnson submitted his Step III grievance on August 14, 2020, and then filed this lawsuit on August 24, *without waiting for a response or allowing the 60-day response period to expire*.

*Id*., at \*1. (Emphasis added).

Noting that "the policy directive indicates that a response will be provided 'in a timely manner' and that responses are generally provided 'within 60 business days,'" the Court in *Richards v. Perttu*, No. 2:20-cv-76, 2022 WL 842654 (W.D. Mich. Mar. 22, 2022), observed, "Consequently, a prisoner could potentially argue that where no response has been received within 60 business days, then exhaustion is complete." *Id*. at \*2. However, because the plaintiff filed his complaint fewer than 60 days after filing his Step III appeal, the Court found that he had not properly exhausted his administrative remedies before proceeding to federal court.

Because the Defendants in this case contend that they never received a Step III appeal, Plaintiff would have presumably waited in vain forever for a response. But the above cases demonstrate that the exhaustion process can be deemed

completed either when the prisoner receives a timely response, *or* when no response is received within 60 days. *Johnson*, 2021 WL 3473483, at *1.[2] But here, Plaintiff jumped the gun by filing his complaint only 35 days after purportedly filing his Step III appeal.

A prisoner must fully exhaust his or her administrative remedies before bringing an action under § 1983. 42 U.S.C. § 1997e(a); *Woodford*, 548 U.S. 81, 92. While there is a question of fact as to whether he filed a Step III grievance appeal, even assuming that he did, he did not complete the administrative process before filing suit. Dismissal of the claims against these Defendants without prejudice is therefore appropriate. *See Bell v. Konteh*, 450 F.3d 651, 653 (6th Cir. 2006) ("[T]he appropriate disposition of an unexhausted claim under the PLRA is dismissal without prejudice.").

### E. Conclusion

---

[2] In his affidavit, Mr. Russell states, "It is also the prisoner's responsibility to follow up with the OLA if he or she has reason to believe that a Step III submission was not received by OLA. Relatedly, because Step III submissions are generally responded to within 60 days, it is the prisoner's responsibility to follow up with OLA if he or she does not receive a response within a few weeks of that time-period." (ECF No. 25-3, PageID.154). Notwithstanding Mr. Russell's opinion, the Policy Directives are silent as to a prisoner's "responsibility" if he or she does not receive a timely Step III response. As the above cases stress, it is the MDOC's responsibility to provide timely responses, and a delay of beyond 60 days is presumptively untimely to the extent that rather than assuming the burden of determining the reasons for the delay, the prisoner can be deemed to have fully exhausted the grievance procedure.

For these reasons, **I RECOMMEND** that this Court **GRANT** Defendants' motion for summary judgment on the basis of exhaustion, dismissing claims against them **WITHOUT PREJUDICE**.  (ECF No. 16).

## III.   <u>REVIEW</u>

Pursuant to Rule 72(b)(2) of the Federal Rules of Civil Procedure, "[w]ithin 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. A party may respond to another party's objections within 14 days after being served with a copy."  Fed. R. Civ. P. 72(b)(2); *see also* 28 U.S.C. § 636(b)(1).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this R&R.  *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Dakroub v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this R&R to which it pertains.

Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity.  Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d).  The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc.  If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date: September 6, 2022                          S/ PATRICIA T. MORRIS
                                                 Patricia T. Morris
                                                 United States Magistrate Judge